UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALICIA M. PAGE, CARMEL COOPER, and CINDY MUNIZ, individually, and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>ALLIANT CREDIT UNION, and DOES 1-100,<br><br>　　　　　Defendants. | Case No.: 1:19-cv-05965 |

**JOINT INITIAL STATUS REPORT**

　　Comes now, Plaintiffs, Alicia M. Page, Carmel Cooper and Cindy Muniz ("Plaintiffs") and Defendant Alliant Credit Union ("Defendant" or "ACU," or "Alliant") and submit this Joint Initial Status Report pursuant to Federal Rule of Civil Procedure, Rule 26(f).

//

//

I.  **Nature of the Case**

   A.  **Identify the attorneys of record for each party, including the lead trial attorney.**

Plaintiffs are represented by Richard McCune, Emily Kirk and David Wright of McCune Wright Arevalo, LLP, and Taras Kick and Roy K. Suh of The Kick Law Firm, APC, and anticipate that Mr. McCune and Mr. Kick will serve as lead trial counsel. Defendant is represented by Stuart M. Richter, Andrew J. Demko, Charles A. DeVore, and Eric T. Werlinger of Katten Muchin Rosenman LLP. Alliant anticipates that Mr. Richter will serve as lead trial counsel.

   B.  **Describe the nature of the claims asserted in the complaint and any counterclaims.**

This is a class action brought by Plaintiffs alleging that ACU breached its contracts with its members and violated a federal regulation and state consumer protection laws related to its overdraft/NSF fee program. Specifically, Plaintiffs assert that ACU charged its members fees for transactions when there was enough money in the members' checking accounts to pay for the transactions, and charged its members multiple NSF fees for single transactions, thereby breaching the express terms of its member contracts (Account Agreement and Opt-In Agreement). Plaintiffs also allege that ACU violated Regulation E (12 C.F.R. § 1005, *et seq*.) of the Electronic Fund Transfer Act (15 U.S.C. § 1693, *et seq*.), by failing to accurately disclose to its members its overdraft practice which is required in order to garner affirmative consent from members to be assessed certain overdraft fees, and other failures to comply with Regulation E. Finally, Plaintiffs allege ACU violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §§ 505/1, *et seq*.) by charging fees against its members when they had enough money in their accounts to pay for the transactions in question, failing to inform them of the balance used in assessing overdraft/NSF fees, and assessing repeat NSF fees on single items, which increased ACU's profits as a result.

Alliant disputes these claims, all of which are preempted by federal law, foreclosed by the terms of the governing contractual documents, or barred under Illinois law. Moreover, Plaintiffs Cooper and Muniz (as well as many members of the putative class) have agreed to settle their claims through binding, individual arbitration. Alliant has filed a motion to dismiss the claims asserted by Plaintiff Page pursuant to Federal Rule of Civil Procedure 12(b)(6), and a motion to compel

arbitration against Plaintiffs Cooper and Muniz. Alliant reserves the right to assert additional defenses and counter claims if and when it is required to file an answer.

        **C.     Briefly state the major legal and factual issues in the case.**

<u>Plaintiffs' View</u>: The major, disputed issues in this case include, but are not limited to: 1) Whether the language in the Opt-In Contract, which stated that ACU would assess overdraft fees only when there was not enough money in the account to cover a transaction, means that fees nonetheless could be charged even when there was enough money in the account to cover the transaction; 2) Whether ACU breached the terms of the contracts by, *inter alia*, assessing overdraft/NSF fees on ACH, ATM, check, and debit card transactions when there was enough money in the account to cover the transaction(s) at issue; 3) Whether the contracts stated that for purposes of assessing an overdraft or NSF fee ACU would use a lesser balance instead of using the real balance in the account; 4) Whether the contracts permitted ACU to charge more than one NSF fee on the same item; 5) Whether ACU was unjustly enriched by its conduct; 6) Whether ACU obtained money from members through the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact; 7) Whether ACU violated Regulation E by charging overdraft fees on ATM and non-recurring debit card transactions; 8) Whether ACU's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act; and 9) Whether this case can be certified as a class action under Federal Rule of Civil Procedure, Rule 23.

<u>Defendant's view</u>: Alliant believes the critical issues include,: (1) Did Plaintiffs Cooper and Muniz agree to arbitrate their claims on an individual basis; (2) Are Plaintiffs' claims preempted by federal regulations promulgated under the Truth in Savings Act to the extent they rely upon Alliant's supposed failure to disclose its policies for approving transactions and assessing fees; (3) Do the governing contractual documents, which state that Alliant authorizes transactions and assesses fees based upon a member's "sufficient *available* funds," require the credit union to instead use a member's "ledger" or "actual" balance; (4) Do the governing contractual documents, as well as national clearinghouse regulations incorporated therein, state that Alliant "will" charge a fee each time an ACH transaction is "presented" and "returned" for non-sufficient funds; (5) Can Plaintiffs

maintain their quasi contract and ICFA claims given that the entirety of their complaint is predicated upon the supposed breach of an admittedly binding contract; and (6) Is this case amenable to resolution on a class-wide basis?

        **D.**        **Describe the relief sought by the plaintiff(s).**

Plaintiffs seek an order certifying this case as a class action, monetary damages, punitive damages, restitution, injunctive, and other appropriate relief.

        **E.**        **Describe the general status of the case.**

Plaintiffs filed this action on September 5, 2019. Alliant waived service on September 25, 2019. It subsequently filed a Motion to Compel Arbitration Against Plaintiffs Carmel Cooper and Cindy Muniz (Dkt. Nos. 16-20), and a Motion to Dismiss All Claims Brought by Plaintiff Alicia Page pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt Nos. 21-26). The parties requested an agreed briefing schedule, which this Court entered on December 3, 2019. (Dkt. No. 30.) Plaintiffs' responses to Alliant's motions are due on January 28, 2020, and Alliant's replies in further support are due by February 27, 2020.

**II.**        **Pending Motions**

        See *supra* Section I.E.

**III.**       **Proposed Discovery Schedule**

        **A.**        **Describe the general type of discovery required.**

The parties presently anticipate that discovery will be needed on the following issues: 1) Whether, when, and for what transactions ACU assessed overdraft/NSF fees to the Plaintiffs and the putative class; 2) Communications between ACU internally or with any consultant regarding revenue from the fees at issue; 3) Which of the relevant contracts were in effect at the time of any such overdraft/NSF transactions; 4) The construction of the governing contracts as to when an overdraft/NSF fee could and could not be assessed; 5) Communications between the Plaintiffs and ACU regarding their accounts and regarding overdraft/NSF fees; 6) Communications between ACU and the putative class concerning overdraft/NSF fees; and 7) Various additional class certification issues, including, the operative account and opt-in agreements, the account posting and overdraft fee

practice; the customer account database; and internal documents regarding the practice.

This list is not exhaustive, and the parties reserve the right to object on any ground to discovery requests even within the listed subject areas.

### B. Proposed discovery schedule.

The parties agree that, once discovery begins (*i.e.*, if and when Alliant's motions to dismiss are denied), discovery shall comply with the MIDP. The parties further agree that written discovery should end **240 days** after the service of the MIDP disclosures. As class issues and liability issues are closely intertwined, and as the threshold issues for liability are likely to involve the same factual predicates as the issues which are ultimately tried, the parties believe that there should be one discovery period, in which all discovery is obtained.

The parties agree that Plaintiffs should be allowed **90 days** after the service of the MIDP disclosures to join additional parties and/or file motions to amend the pleadings. Plaintiffs are not waiving any right to later seek leave to amend based on, *inter alia*, new facts ascertained as part of discovery or any need to add or substitute class representatives to preserve the claims and rights of the classes. ACU should be allowed **120 days** after the service of the MIDP disclosures to join additional parties and/or file motions to amend the pleadings, without waiving any right to later seek to amend based on, *inter alia*, new facts ascertained as part of discovery or any need to add or substitute parties to protect the rights of the defendant.

Plaintiffs, at this early juncture, cannot state definitively the number of depositions that will be necessary, as this number will depend on the number of witnesses ACU designates, whether ACU retains an expert, and whether any third parties will be relevant. At this time, Plaintiffs estimate that no more than 6 depositions will be needed. ACU preliminarily anticipates that it will require a total of 1 to 6 depositions of fact witnesses, but both parties reserve all rights to seek and to oppose the taking of any depositions. The depositions of fact witnesses will commence as soon as mutually convenient and will be completed within **210 days** after the service of the MIDP disclosures.

Plaintiffs intend to call expert witnesses at trial. Plaintiffs will designate all trial experts and provide opposition counsel with reports from retained experts pursuant to Rule 26(a)(2) of the

4

Federal Rules of Civil Procedure within **15 days** after the discovery cut-off. Depositions of any such experts will be completed within **90 days** after the discovery cut-off.

ACU also intends to call expert witnesses at trial. ACU will designate all trial experts and provide opposition counsel with reports from retained experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure within **15 days** after receiving Plaintiffs' trial experts' reports. Depositions of any such experts will be completed within **90 days** after the discovery cut-off.

Plaintiffs' Motion for Class Certification will be due no later than **30 days** after the discovery cut-off. ACU's Opposition to Class Certification will be due **30 days** after Plaintiffs' Motion is filed. Plaintiffs' Reply, if any, will be due **30 days** after ACU's Opposition is filed.

Dispositive motions, if any, will be filed no later than **45 days** after the Court issues a class certification order.

The parties' joint trial memorandum will be filed by the latest of **60 days** after the Court's order on any dispositive motions or **90 days** after the class certification order if no dispositive motions are filed.

The case will be considered trial ready **60 days** after the filing of the parties' joint trial memorandum as provided above.

IV. **Trial.**

Plaintiffs have filed a jury demand, and the parties anticipate a 14 day trial.

V. **Status of Settlement Discussions.**

The parties do not know at this time whether settlement is likely, although there have been a number of other class action cases regarding such fees which have been successfully resolved by the same counsel through the use of a private mediator. The parties do not request an early settlement conference or referral for ADR, but will discuss whether a private mediator is desirable at this time.

VI. **Consent to Proceed Before the Magistrate Judge.**

The parties respectfully decline to proceed before the Magistrate Judge.

Respectfully submitted,

Dated: December 4, 2019.

| FOR PLAINTIFFS: | FOR DEFENDANT: |
|---|---|
| /s/ *Emily J. Kirk* | /s/ *Charles A. DeVore* |
| Emily J. Kirk, IL 6275282 | Charles A. DeVore |
| ejk@mccunewright.com | KATTEN MUCHIN ROSENMAN LLP |
| McCUNE WRIGHT AREVALO, LLP | 525 West Monroe Street |
| 231 North Main Street | Chicago, Illinois 60661 |
| Suite 20 | Tel.: 312-902-5200 |
| Edwardsville, IL 62025 | charles.devore@katten.com |
| Telephone: (909) 557-1250 | |
| | Stuart M. Richter (application for admission forthcoming) |
| Richard D. McCune (*Pro Hac Vice*) | Andrew J. Demko (application for admission forthcoming) |
| rdm@mccunewright.com | KATTEN MUCHIN ROSENMAN LLP |
| David C. Wright (*Pro Hac Vice*) | 2029 Century Park East – Suite 2600 |
| dcw@mccunewright.com | Los Angeles, CA 90067 |
| McCUNE WRIGHT AREVALO, LLP | Tel.: 310-788-4400 |
| 3281 East Guasti Road, Suite 100 | stuart.richter@katten.com |
| Ontario, California 91761 | andrew.demko@katten.com |
| Telephone: (909) 557-1250 | |
| | Eric T. Werlinger (application for admission forthcoming) |
| Taras Kick (*Pro Hac Vice*) | KATTEN MUCHIN ROSENMAN LLP |
| Taras@kicklawfirm.com | 2900 K Street, NW – Suite 200 |
| THE KICK LAW FIRM, APC | Washington, DC 20007 |
| 815 Moraga Drive | Tel.: 202-625-3500 |
| Los Angeles, California 90049 | eric.werlinger@katten.com |
| Telephone: (310) 395-2988 | |
| | *Counsel for Defendant Alliant Credit Union* |
| *Attorneys for Plaintiffs and the Putative Class* | |