## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALICIA M. PAGE, CARMEL COOPER, and CINDY MUNIZ, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:19-cv-5965 |
| Plaintiffs, | ) ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) | |
| ALLIANT CREDIT UNION and DOES 1-100, | ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

In September 2019, plaintiffs filed the present putative class action lawsuit challenging the practice of defendant Alliant Credit Union ("Alliant") and defendant DOES 1 through 100 of charging overdraft fees when member's banking accounts have sufficient funds to cover certain transactions. Before the Court is Alliant's motion to compel arbitration in relation to named plaintiffs Carmel Cooper and Cindy Muniz. For the following reasons, the Court grants Alliant's motion.

**Background**

Alliant is a non-profit state-chartered credit union that offers its members various financial services, including checking accounts and debit cards. Alliant's relationship with its members is controlled by membership agreements. The membership agreements cover both Alliant's and the member's rights and responsibilities in relation to the member's banking accounts. When plaintiffs Muniz and Cooper joined Alliant, they agreed to the terms and conditions of the credit union's membership agreement and any amendments to the agreements.

At issue in this motion is Alliant's August 2019 amendments to the membership agreement that Alliant emailed to Muniz and Cooper between July 24 and July 25, 2019. The email contained a

hyperlink to the 2019 amendments, which contained the following arbitration clause:

> **ARBITRATION AGREEMENT** – If you have a dispute, we want to resolve it as
> quickly and easily as possible.  Please contact us to discuss your concerns.  If we are
> unable to informally resolve your dispute, you agree that it shall be resolved in
> arbitration.  You or Alliant can initiate the arbitration as described in this section.

(R. 19-1, Ex. 1, Aug. 2019 Agreement, at 11.) (bold in original).

 The August 2019 membership agreement also addressed particular concerns regarding the affect of

the agreement with two issues set forth as follows,

> **Do I have to agree to this Arbitration Agreement?**
> Yes.  Unless you opt out of this arbitration agreement, then all disputes shall be
> decided by arbitration.  You may opt-out of this Arbitration Agreement by calling us
> at 800-328-1935 or by sending a secure message through our online banking system
> within 60 days of this notice being sent or establishing your membership.
>
> …
>
> **Can I still have my dispute heard by a court or be part of a class action?**
> **Unless you opt-out of this Arbitration Agreement, you and Alliant are waiving**
> **the right to have a dispute heard before a judge or jury, or decided by a court**
> **or government tribunal.  You and Alliant also waive any right or ability to**
> **participate in a representative or class action basis in arbitration or court.**

(*Id.*) (bold in original).

Alliant has presented an unrebutted declaration that it sent the August 2019 revisions via

email to Muniz and Cooper at the end of July 2019.

**Legal Standard**

A motion to dismiss under Rule 12(b)(3) for improper venue is the appropriate procedure

when a litigant seeks to dismiss a lawsuit based on an arbitration agreement.  *Faulkenberg v. CB Tax*

*Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *Automobile Mech. Local 701 Welfare & Pension*

*Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007).  Under Rule 12(b)(3),

district courts may consider materials outside of the pleadings, including the parties' arbitration

agreement.  *Continental Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).  In

determining whether an agreement's arbitration clause controls, federal courts apply state-law principles of contract formation.[1] *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019). "Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer v. Fromm Family Foods, LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

**Discussion**

Plaintiffs first argue that they did not assent to being bound by the arbitration agreement because they could not willingly opt-out of an agreement that they did not know existed in the first instance. *Janiga v. Questar Capital Corp.,* 615 F.3d 735, 742 (7th Cir. 2010) ("the court must decide whether a contract exists before it decides whether to stay an action and order arbitration."). In support of their argument, plaintiffs provide their own declarations that they did not see Alliant's emails or become aware of the emails' contents until Alliant filed the present motion to compel arbitration.

Although the terms of their membership agreements allowed for electronic notice of amendments and plaintiffs agreed to such electronic notice, plaintiffs now claim that they did not read the July 2019 emails or the hyperlinked amendments. In a similar case where the plaintiffs did not discover an arbitration clause in a computer purchase agreement, the Seventh Circuit concluded that a "contract need not be read to be effective; people who accept [it] take the risk that the unread terms may in retrospect prove unwelcome." *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997). Under Illinois law silence can constitute acceptance based on the parties' previous dealings, such as here where the parties have an ongoing contractual relationship. *See Gupta,* 934 F.3d at 713; *Ragan v. AT & T Corp.,* 824 N.E.2d 1183, 1188, 291 Ill.Dec. 933, 938, 355 Ill.App.3d 1143, 1149 (5th

---

[1] Pursuant to the parties' membership agreements, Illinois law controls this dispute.

Dist. 2005); *Fineman v. Citicorp USA, Inc.*, 485 N.E.2d 591, 595, 92 Ill.Dec. 780, 784, 137 Ill.App.3d 1035, 1042 (1st Dist. 1985).

Furthermore the conspicuous and unambiguous opt-out provision of the agreement and coupled with plaintiff's silence makes plaintiffs' silence constitute assent to the arbitration provision. *See Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002). In short, that plaintiffs' failure to read the 2019 amendments does not relieve them of their responsibilities under their membership agreements with Alliant. *See F.T.C. v. IFC Credit Corp.,* 543 F.Supp.2d 925, 946 (N.D. Ill. 2008) (Cole, J.) ("Long-standing principles of contract and sound public policy impose a duty on contracting parties to understand the obligations they are assuming, and if they do not, they cannot be heard to later complain about a lack of understanding."); *see also Treiber & Straub, Inc. v. U.P.S., Inc.,* 474 F.3d 379, 385 (7th Cir. 2007) ("one cannot accept a contract and then renege based on one's own failure to read it") (citation omitted).

Nevertheless, plaintiffs rely on a Second Circuit case where the court applied California and Connecticut law when it concluded that a business' unsolicited email failed to put the recipients on notice of the terms of the parties' agreement. *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 123 (2d Cir. 2012). *Schnabel* is distinguishable where the court recognized that "there was no prior relationship between the parties that would have suggested that terms sent by email after the initial enrollment were to become part of the contract." *Id.* at 126. *Schnabel* does not help plaintiffs because they had an ongoing banking relationship with Alliant, and, pursuant to their membership agreements, they had certain responsibilities unlike the plaintiffs in *Schnabel*.

Plaintiffs also maintain that the email cover letter to the 2019 amendments misled them because it did not mention the arbitration language, but rather highlighted changes to certain banking practices. Plaintiffs rely on the Seventh Circuit's decision in *Sgouros v. TransUnion Corp.,* 817 F.3d 1029, 1035 (7th Cir. 2016), for the proposition that Alliant actively misled them because Alliant

4

did nothing to ensure that plaintiffs would see the arbitration clause before agreeing to it. In *Sgouros*, plaintiffs clicked a button stating "I accept" authorizing defendant to obtain personal information, when in fact, plaintiff was also accepting an online agreement that was discussed once the viewer scrolled down the webpage. On these facts, the Seventh Circuit concluded "[n]o reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the Service Agreement." *Id. Sgouros* is not only factually distinguishable from this case, but it does not place an affirmative duty on defendants to "ensure" plaintiffs saw the arbitration agreement before agreeing to it as plaintiffs argue. Likewise, plaintiffs' reliance on cases from other jurisdictions that are factually and legally distinguishable fares no better in supporting their claim that Alliant actively misled them.

In an alternative argument, plaintiffs also argue that they opted out of the arbitration agreement by filing this lawsuit less than 60 days after the 2019 amendments took effect on August 1, 2019. In making their argument, plaintiffs rely on Illinois law that forgives complete performance of construction contracts that are substantially performed in relation to mechanic's liens. *See Doornbos Heating & Air Conditioning, Inc. v. James D. Schlenker*, 932 N.E.2d 1073, 1088, 342 Ill.Dec. 612, 627, 403 Ill.App.3d 468, 483 (1st Dist. 2010). Plaintiffs do not explain how this narrow area of Illinois construction law applies under the circumstances, especially because the opt-out provision of the membership agreement specifically gave the methods by which a member could opt out.

Last, plaintiffs contend that the class action waiver in the 2019 membership agreement is unconscionable and unenforceable because they did not have an adequate opportunity to reject it. Plaintiffs specifically assert that the class action waiver is procedurally unconscionable, which, under Illinois law, "refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Jackson v. Payday Fin., LLC,* 764 F.3d 765, 777 (7th Cir. 2014) (citation

omitted). "Factors to be considered in determining whether an agreement is procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Id.* at 777-78 (citation omitted).

Plaintiffs' bare-boned unconscionability argument fails. As discussed, the terms of their membership agreements allowed for Alliant to amend the terms of the agreements and for electronic notice of any such amendments. Moreover, the opt-out language, including the class action waiver, was conspicuous and unambiguous in that plaintiffs had 60 days to opt out of the arbitration agreement and class action waiver. Although plaintiffs claim they did not read the arbitration clause, nothing was hidden from them as they now suggest.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion to compel arbitration [16]. The Court will address defendant's motion to dismiss in relation to plaintiff Alicia M. Page in a separate ruling.

**IT IS SO ORDERED.**

Date: 5/18/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

6