UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALICIA M. PAGE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 19-cv-5965 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| ALLIANT CREDIT UNION, et. al, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed the present putative class action challenging the practices of defendant Alliant Credit Union ("Alliant") and defendants DOES 1 through 100 in relation to charging overdraft or non-sufficient fund ("NSF") fees. Before the Court is Alliant's motion to dismiss named plaintiff Alicia A. Page's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, the Court grants in part with prejudice and grants in part without prejudice Alliant's motion to dismiss.

**Background**

The Court takes the following facts from the complaint as true for purposes of this motion. Alliant is a non-profit, state-chartered credit union that offers its members various financial services, including checking accounts and debit cards. Alliant's relationship with its members is governed by Account Agreement and Disclosures ("Membership Agreement"). Page alleges that when processing transactions, Alliant has a practice of assessing overdraft or NSF fees although a member's account has sufficient funds to cover the transaction and that this practice is contrary to the express terms of the Membership Agreement. In addition, Page challenges Alliant's practice of

---

[1] On May 18, 2020, the Court granted Alliant's motion to compel arbitration as to named plaintiffs Carmel Cooper and Cindy Muniz.

charging multiple overdraft fees for one purchase when retailers re-submit the same transaction for Alliant's approval.

The parties agree that the Membership Agreement governing their dispute is the November 2013 version. In the November 2013 agreement, the relevant language states:

> <u>Withdrawal Restrictions</u>. We permit withdrawals only if your account has sufficient available funds to cover the full amount of the withdrawal or you have an established overdraft protection plan. Checks or other transfer payment orders which are drawn against insufficient funds may be subject to a service charges as set forth in the Fee Schedule. If there are sufficient funds to cover some, but not all of your withdrawal, we may allow those withdrawals for which there are sufficient funds in any order at our discretion. We may refuse to allow a withdrawal in some situations, and will advise you accordingly[.]
>
> ….
>
> <u>Overdraft Liability</u>. If on any day, the funds in your savings account are not sufficient to cover checks, fees or other items posted to your account, those amounts will be handled in accordance with our overdraft procedures or by one of the overdraft protection plans outlined below. … Whether the item is paid or returned, your account may be subject to a charge as set forth in the Fee Schedule[.]

(R. 1, Ex. D, §§ 7a, 8a.)

In her complaint, Page contends that Alliant has breached the Membership Agreement, breached the implied covenant of good faith and fair dealing, and engaged in unfair and deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. Page also brings quasi-contract claims for equitable relief in the alternative to her breach of contract claim.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss,

plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When ruling on a motion to dismiss, courts "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019).

**Discussion**

*Preemption*

Alliant's first argument is that Page's state law claims are preempted by the Truth in Savings Act ("TISA") because they are, in essence, claims that Alliant failed to disclose certain fee practices. Although several federal district courts have concluded that claims based on a credit union's failure to disclose are preempted by the Truth in Savings Act ("TISA") and/or Federal Credit Union Act ("FCUA"),[2] "true breach of contract and affirmative misrepresentation claims are not federally preempted, even if the result of those claims may affect a federal credit union's fee disclosures." *Lambert v. Navy Federal Credit Union*, No. 19-cv-103, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019); *see also Noe v. City Nat'l Bank of West Va.,* No. 19-690, 2020 WL 836871, at *5 (S.D. W.Va. Feb. 19, 2020) (collecting cases); *Lussoro v. Ocean Fin. Federal Credit Union*, No. 18-cv-7400, 2020 WL 1941236, at *8 (E.D.N.Y. Apr. 22, 2020) (FCUA does not preempt New York's deceptive business practices act claims). As such, the parties dispute the nature of Page's claims.

Examining Page's breach of contract claim, she alleges that Alliant has an overdraft practice that is contrary to the express terms of the Membership Agreement. More specifically, she asserts that despite the language in Membership Agreement, Alliant has a practice of assessing overdraft

---

[2] Alliant is a state-charted credit union; therefore, preemption under the FCUA does not apply.

fees based on an artificial calculation that deducts "holds" Alliant has placed on pending debit card transactions and deposits. Page also alleges that contrary to the terms of the agreement, Alliant has a practice of charging multiple overdraft fees for one attempted purchase, which occurs when retailers re-submit the same transaction for Alliant's approval.

Under these allegations, Page is bringing a "true" breach of contract claim, not a failure to disclose claim as Alliant argues, especially because she highlights the terms of the Membership Agreement that Alliant allegedly breached, as discussed in detail below. *See Lambert*, 2019 WL 3843064, at *3 (although "credit unions have the discretion to determine fee practices and disclosures free from state regulation inconsistent with the FCUA, the TISA, and their implementing regulations … credit unions must still comply with the terms of their contracts related to fee practices and not affirmatively misrepresent those practices."). Therefore, Page's breach of contract claim is not preempted.

In support of her ICFA claim, Page alleges that Alliant's practice in relation to its overdraft fees constitutes both unfair and deceptive business practices. She specifically asserts that Alliant misrepresented the actual nature of its overdraft program – not that it failed to disclose certain aspects of its practice. For example, Page alleges that Alliant engaged in an unfair practice of assessing overdraft fees when there was enough money in a member's account to pay for the transactions in question. As such, Page's ICFA claim is not preempted.

Because Page's claims are not preempted, the Court examines whether she has adequately alleged her claims under the federal pleading standards.

*Breach of Contract Claim*

First, Page alleges that Alliant has breached the Membership Agreement by charging overdraft fees when a member's account has sufficient funds and by assessing multiple overdraft fees for a single transaction. Before addressing the terms of the Membership Agreement in relation

to overdraft fees, a general background is in order. "Overdraft fees are tied to the customer's account balance," and "[f]inancial institutions primarily use two methods to calculate an account holder's checking account balance: the 'ledger' balance and the 'available' balance." *Domann v. Summit Credit Union*, No. 18-cv-167, 2018 WL 4374076, at *1 (W.D. Wis. Sept. 13, 2018) (Crocker, J.); *see also Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1235 (11th Cir. 2019).

> A ledger-balance method factors in only settled transactions in calculating an account's balance; an available-balance method calculates an account's balance based on electronic transactions that the institutions have authorized (and therefore are obligated to pay) but not yet settled, along with settled transactions. An available balance also reflects holds on deposits that have not yet cleared.

*Domann,* 2018 WL 4374076, at *1 (quoting Consumer Financial Protection Bureau, Winter 2015 Supervisory Highlights, Section 2.3). Simply put, the ledger balance reflects the total amount of funds in a bank account, whereas an available balance is the amount of funds accessible for withdrawal. Accordingly, "[u]sing the available balance method often leads to more frequent overdrafts because there is less money available in the account due to holds and pending transactions." *Domann*, 2018 WL 4374076, at *2 (citation omitted).

Illinois law governs this dispute as set forth in the Membership Agreement. In construing contracts under Illinois law, a court's primary objective is to give effect to the intent of the parties. *Stampley v. Altom Transport, Inc.*, 958 F.3d 580, 586 (7th Cir. 2020). In doing so, Illinois courts give unambiguous terms their plain, ordinary, and popular meaning. *Royce v. Michael R. Needle P.C.,* 950 F.3d 939, 951 (7th Cir. 2020). A "contract is not rendered ambiguous merely because the parties disagree on its meaning," *Stampley*, 958 F.3d at 586, but rather terms are ambiguous if the "language is reasonably or fairly susceptible to multiple meanings." *Bank of Commerce v. Hoffman*, 829 F.3d 542, 546 (7th Cir. 2016). Illinois courts construe contracts as a whole and "will not strain to interpret a particular provision in a way that would render another provision meaningless." *National Cas. Co. v.*

*McFatridge*, 604 F.3d 335, 340 (7th Cir. 2010); *see also Market Street Bancshares, Inc. v. Federal Ins. Co.*, 962 F.3d 947, 955 (7th Cir. 2020).

At issue is the following language set forth in § 7a entitled "Withdrawal Restrictions: "We permit withdrawals only if your account has *sufficient available funds* to cover the full amount of the withdrawal or you have an established overdraft protection plan." Although the plain, unambiguous language states that a member needs sufficient *available* funds, Page argues that she should be "permitted to draw from the entirety of her account, setting aside Alliant's internal holds and accounting gimmicks"[3] because the overdraft section of the Membership Agreement speaks to sufficient or insufficient funds without the qualifying word "available." By making this argument, Page is not reading the Membership Agreement as a whole, but rather she is taking sections of the Membership Agreement out of context. Moreover, Page's reading of the agreement that all of her funds should be accessible renders the term "available" meaningless.

To clarify, reading § 7a as a whole, the term "sufficient available funds" is followed by language discussing service charges outlined in the fee schedule if the member does not have overdraft protection. Section 8b of the Membership Agreement, the overdraft protection section, explains: "If the amount of the item presented for payment exceeds the total available overdraft sources, the item will be returned as non-sufficient funds (NSF) and you will be charged applicable fees." Read in tandem, these sections of the Membership Agreement spell out that not all funds are immediately available for use or withdrawal.

Nevertheless, relying on the Eleventh Circuit's *Tims* opinion, Page argues that "sufficient available funds" is ambiguous because the Membership Agreement did not adequately address the

---

[3] Page's assertion that Alliant uses "accounting gimmicks" is a non-starter considering that many financial institutions use the available balance method and not the ledger method when calculating overdraft fees.

6

account balance calculation method Alliant used. In *Tims*, the Eleventh Circuit examined an agreement in which the term "available" was untethered to the financial institution's fee policy for overdrafts. Instead, the credit union's withdrawal restrictions were linked to "sufficient funds." *Id.* at 1239-40. Here, the Membership Agreement links the withdrawal restrictions to the member's "sufficient available funds." That other financial institutions use different language in relation to their overdraft policies does not establish any ambiguity under the Membership Agreement at issue in this lawsuit. Last, Page's argument that the Membership Agreement did not explain or define the account balance calculation ignores the language in Funds Availability Policy ("FAP") section of the November 2013 agreement, which explains a member's ability to withdraw funds based on their availability. For example, the FAP explains Alliant's right to place "holds" on deposits. The Court therefore grants with prejudice this aspect of Alliant's motion to dismiss.

Next, Page asserts that Alliant breached the Membership Agreement by assessing multiple overdraft fees for a single transaction. A relevant portion of the Membership Agreement include part of § 8a that states: "Whether the item is paid or returned, your account may be subject to a charge as set forth in the Fee Schedule." Based on the singular use of the terms "charge" and "item," Page argues that Alliant can only charge one fee for a single transaction. Again, Page reads this section in isolation ignoring the plain text of § 8b that states, "[i]f the amount of the item presented for payment exceeds the total available overdraft sources, the item will be returned as non-sufficient funds (NSF) and you will be charged applicable fees." The language in these provisions does not promise members that Alliant will charge just one overdraft fee per transaction. Rather, in the context of the entire Membership Agreement, Alliant charges its members an overdraft fee every time a third-party payee presents an item for payment against insufficient available funds. Page's stilted reading of the Membership Agreement does not create any ambiguity.

7

Page's remaining arguments are equally unpersuasive. For example, Page compares Alliant's practices to other financial institutions pointing out Alliant's failure to adequately disclose its practice on overdraft fees. As discussed, Page's failure to disclose claims are preempted by TISA. Undeterred, Page also asserts that the overdraft practices of other financial institutions create "inherent ambiguity" in the Membership Agreement, yet the Court cannot consider extrinsic evidence if the agreement's language is unambiguous, as is the case here. *See Abellan v. Lavelo Property Mgmt., LLC,* 948 F.3d 820, 828 (7th Cir. 2020). The Court therefore grants with prejudice this aspect of Alliant's motion to dismiss.

*Implied Covenant of Good Faith and Fair Dealing Claim*

Alliant contends that the Court must dismiss Page's claim for breach of the implied covenant of good faith and fair dealing because it is not a stand-alone claim under Illinois law. The Court agrees. *See McArdle v. Peoria School Dist. No. 150,* 705 F.3d 751, 755 (7th Cir. 2013) ("The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action."). The Court therefore grants Alliant's motion to dismiss this claim with prejudice.

*Quasi-Contract Claims*

Further, Alliant maintains that the Court must dismiss Page's quasi-contract claims of unjust enrichment and "money had and received" because there is a binding contract at issue. It is well-established that under Rule 8, a plaintiff may plead quasi-contract claims in the alternative to a breach of contract claim. *See Blanchard & Assocs. v. Lupin Pharm., Inc.,* 900 F.3d 917, 921 (7th Cir. 2018) ("inconsistency doesn't matter at the pleading stage; a complaint may plead these two state-law theories in the alternative."). The Seventh Circuit explains, however, "the inconsistent-pleading option in this context is limited" giving guidance that a "plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express

8

contract, then the defendant is liable for unjustly enriching himself at my expense." *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (emphasis in original).

Alliant correctly asserts, Page's quasi-contract claims cannot stand because Page incorporated her breach of contract allegations into her equitable claims. *See id.* ("[W]hile [a] plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel."). Under this precedent, the Court grants Alliant's motion to dismiss Page's quasi-contract claims without prejudice granting Page leave to amend her quasi-contract claims accordingly.

*ICFA Claim*

Last, Alliant argues that Page has failed to plead a viable ICFA claim because she did not allege any conduct separate and apart from the breach of the Membership Agreement. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416 (Ill. 2002)). Under the ICFA, deceptive acts and unfair acts are distinct theories of liability. When determining whether a business practice is unfair, "Illinois courts consider three factors: whether it "offends public policy"; is "immoral, unethical, oppressive, or unscrupulous"; or "causes substantial injury to consumers." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). On the other hand, "a practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citation omitted). A plaintiff must allege deceptive business practice claims with particularity under Rule of 9(b). *Id.*

9

A "breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.,* 771 F.3d 391, 402 (7th Cir. 2014) (citation omitted). Rather, a plaintiff must identify a stand-alone deceptive or unfair practice. *Community Bank of Trenton v. Schnuck Markets, Inc.,* 887 F.3d 803, 822 (7th Cir. 2018). In response, Page identifies Alliant's use of what she calls the "artificial available balance" or "accounting gimmicks" as deceptive and unfair. She also states that Alliant affirmatively misrepresented its fee practices and overdraft program. Not only are these arguments intermingled with Page's breach of contract claims, she fails to allege the alleged deceptive business practices under Rule 9(b)'s particularity requirements. Her statement "once a deceptive act is established, the rest of the elements snap into place" does little to meet these either Rule 8(a)'s or Rule 9(b)'s pleading requirements. The Court grants Alliant's motion to dismiss Page's ICFA claim without prejudice.

On a final note, Page filed a request for the Court to take judicial notice of account agreements from other institutions to support her opposition to Alliant's motion to dismiss. *See* Fed.R.Evid. 201(b)(2). Page suggests that the Court review this extrinsic evidence in evaluating her breach of contract claims. Because the Membership Agreement is unambiguous, the Court will not consider this extrinsic evidence, and thus denies Page's request.

**Conclusion**

For the foregoing reasons, this Court grants in part with prejudice and grants in part without prejudice. [21]. The Court grants plaintiff leave to file an amended complaint in accordance with this ruling by no later than September 24, 2020.

IT IS SO ORDERED.

Date: 8/26/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge